LittletoN, Judge,
delivered the opinion of the court:
The plaintiff, after having completed more than 16 years’ active service as an enlisted man in the United States Navy, was transferred on February 26, 1936, to the Fleet Reserve and released to inactive- duty in the rating of Chief Commissary Steward. On August 22, 1940, he was recalled to active duty from the Fleet Reserve and served continuously during the emergency and war periods until July 11, 1945, when he was again released from active duty. At the time of his release' in 1945, plaintiff had completed more than 20 years’ active duty service with the Navy. ■
Plaintiff has drawn, since his release to inactive status in 1945, retired or retainer pay computed on the basis of one-ithird of the base pay of a Chief Commissary Steward, in *505 creased by 35 percent for longevity on account of more than. 21 years’ active service.
Plaintiff’s position is that he has been, since July 11,1945 (the date of his last release to inactive duty), entitled to retired or retainer pay computed on the basis of one-half of the base pay of a Chief Commissary Steward, increased by 35 percent for longevity, and further increased by 10 percent for good conduct. Plaintiff’s claim is founded upon the Act of August 10, 1946 (60 Stat. 993), amending the Naval Eeserve Act of 1938 (52 Stat. 1175). The pertinent parts of Sections 203 and 204 of the 1938 Áct and Sections 2 arid 3 of the 1946 Act are as follows: '
Sec. 203. Men serving in the Regular Navy,. who, having enlisted thereiri on July 1,1925, or prior thereto * * * shall be entitled to be transferred to the .Fleet Reserve on the completion of sixteen or more years’ naval service, and when so transferred shall, except when on active duty, be entitled to receive, if they have had sixteen but less than twenty years’ naval service, pay at the rate of one-third the base pay they' were receiving at the time of transfer, plus all permanent additions thereto, and if they have had twenty or more years’ naval service, pay at the rate of one-half of the base pay they were receiving at the time of transfer, plus all permanent additions thereto: Provided, That the pay authorized in this section shall be increased 10 per centum for all men * * * whose average marks in conduct for twenty or more years shall not be less than 95 per centum of the maximum * ■* *.
Sec. 204. Men serving in the Regular Navy on the date of the passage of this Act, who first enlisted in the Navy after July 1,1925, or who reenlisted therein after July 1, 1925, having been out of the Regular Navy for more than three months, and men who first enlist in the Regular Navy after the passage of this Act, may upon their own request ,be transferred to the Fleet Reserve upon the completion of at least twenty years’ naval, service- . * * *. After such transfer, except when on active duty, they shall be paid at the rate of one-half of the base pay they are receiving at the time of’trans-f ©r si®
Act of August 10,1946:
Sec. 2. Section- 204 of the Naval Reserve Act pf 1938 (52 Stat. 1179) is hereby amended to read as follows:
*506 • Sec. 204: Members of the Navy who first enlisted in the Navy after July 1, 1925, or who reenlisted therein after July 1,1925, liaving been out of the Kegular Navy for more than three months, may upon their own request be transferred to the Fleet Keserve upon the completion of at least twenty years’ active Federal service. After such transfer, except when oh active duty, they shall be paid at the annual rate of 2y2 per centum of the annual base and longevity pay they are receiving at the time of transfer multiplied by the number of years of active Federal service: * * * Provided further, That the pay authorized in this section shall not exceed 75 per centum of the active-duty base and longevity pay they were receiving at the time of transfer: * * * Provided further, That nothing contained within this section shall be construed to prevent persons who qualify for transfer to the Fleet Keserve under the provisions of section 203 of this Act from being transferred in accordance with the provisions of this section if they so elect: * * * And provided further, That the provisions of this section shall apply to all persons of the class described herein heretofore or hereafter transferred to the Fleet Keserve, except that no increase in pay or allowances shall be deemed to have accrued prior to the date of the enactment of this amendment. * * *
Sec. 3. Title II of the Naval Keserve Act of l938 (52 Stat. 1178) is hereby amended by adding thereto a new section to read as follows:
Sec. 208. Whenever enlisted men of the Fleet Keserve, transferred thereto after more than sixteen years’ service * *" * perform active duty after July 1, 1925, such active duty, except that which they are required to perform in time of peace under section 206 of this title shall be included in the computation of their total service for the purpose of computing their retainer or retired pay when in an inactive-duty status, and in thecomputa- • tion of their retainer or retired pay all active duty so performed subsequent to- the effective date of transfer to the Fleet Keserve or to-the retired list shall be counted for the purpose of ¡computing percentage rates and increases with respect to their retainer or retired pay and shall be'based on the enlisted pay received by them at -the time they resume inactive-duty status, including increases in consequence of advancement in rating, longevity, and extraordinary heroism: Provided, That such pay shall not exceed 75 percentum of the fiase and longevity pay of the highest rating to which entitled under the *507 provisions of this section: Provided further, That active duty performed during any period of national emergency declared by the President shall be considered for thepur-pose of this section as not being active duty in time of peace required by section 206: Provided further, That nothing contained in this section shall operate to reduce the retainer or retired pay and allowances to which any enlisted man would otherwise have been entitled: * * * ■And provided further, That persons of the classes described in this section who have been retired or returned to an inactive duty status prior to the date of approval of this section shall be entitled to the benefits of this section from the date of retirement or return to an inactive duty status.
The Naval Reserve Force was established by the Act of August 29, 1916 (39 Stat. 556, 587), one of its components being the Fleet Naval Reserve. This Act provided that enlisted men of the Navy might, after 16 or 20 years’ honorable service, be transferred at their own request to inactive duty in the Fleet Naval Reserve at retainer pay of one-third and one-half, respectively, of the base pay they were receiving at the close of their last naval service plus all permanent additions thereto and increased 10 per centum for men credited with extraordinary heroism or whose average conduct marks for 20 years or more Should be not less than 95 per centum of the maximum.
The Naval Reserve Force established by the Act of August 29, 1916, supra, was abolished by the Act of February 28, 1925 (43 Stat. 1080), and a revised reserve establishment termed the “Naval Reserve” was established. The Fleet Naval Reserve remained as a component, but it wasprovided that all men enlisting in the Navy after the date of passage of the Act should be eligible for transfer to’the Fleet Naval .Reserve only after the completion of at least 20 years’ service, at which time they would be entitled to retainer pay computed at the rate of one-half of the base pay they were receiving at the time of transfer. This 1925 Act effected a considerable lessening of retirement benefits to men enlisting after the date thereof. A longer' period of service was required before release to inactive duty, and retainer pay Was lessened' by the omission of “permanent additions” 'to base *508 ■pay and by the omission of increases for good conduct or heroism. However, the Act expressly retained for men currently serving (provided they maintained continuous naval service) the benefits obtaining prior to the passage of the Act, which benefits may have been an inducement for enlistment or reenlistment (43 Stat. 1080, 1087, 1088, § 26).
The Naval Reserve Act of 1938 (52 Stat. 1175), again revised organization of the Navy’s reserve units. Pertinent parts of this Act are quoted, supra, and it is only necessary to point out here that once again Congress secured to those men enlisting before July 1,1925, the benefits that had been in effect at the time of their enlistment.
Shortly following the Act of 1938 came the period of national emergency; then the war years; since then an era of uncertainty and quasi-conflict. In 1946, the Congress, in an attempt to induce trained fighting men to remain in the Navy during the postwar period, passed “An Act to provide additional inducements to citizens of the United States to make a- career of the United States military or naval service, and for other purposes.” This was the Act of August 10, 1946, supra. This Act materially increased the benefits payable to an enlisted man released to inactive duty after 20 years’ service. In this Act, too, Congress remembered those who had returned from retirement or inactive duty to add their mature experience to the prosecution of the war. Section 3 of the Act of August 10, 1946, amended Title II of the Naval Reserve Act of 1938, supra, by adding thereto Section 208, hereinbefore quoted.
Congress was cognizant of the fact that a great number of older enlisted men, either retired or on inactive duty, had been recalled to active duty, not for short periods, but for four or five arduous years of emergency and war. .The 1946 Act-provided that when these veterans were again retired or released to inactive duty they should be entitled to count their wartime active duty in the computation of the retired or inactive duty pay to. which they were entitled.
The defendant contends that an enlisted man retired.under Section 203 of the Naval Reserve Act of 1938 (which carried forward tbe provisions of the Act of February 28, *509 1925, supra, in force at the time of plaintiff’s first release to inactive status in 1936) is not entitled to the benefit to •be derived from computing his period of active service to include active service after recall, because the language of Section 203 (following the language of the superseded statute) refers to computation based upon one-third or one-half of base pay, while Section 208 (added by the Act of August 10, 1946, supra) provides that “in the computation of their retainer or retired pay all active duty so performed subsequent to the effective date of transfer to the Fleet Reserve or to the retired list shall be counted for the purpose of computing percentage rates and increases with respect to their retainer or retired pay.” It is the defendant’s position that as Section 208 of the 1946 Act refers only to percentages and not to fractions it cannot be availed of by plaintiff in the computation of years of active service (for retainer pay purposes) when released to inactive duty under Section 203 of the 1938 Act. This was the ruling of the Comptroller General (26 Comp. Gen. 804, 809). The Government contends that the only application of Section 208 is to release or retirement under Section 204, which provides for the computation of retirement of inactive duty pay on a percentage basis.
-Webster’s Unabridged Dictionary defines percentage as “A part or proportion of a whole expressed as so much or so many per hundred.” The same work defines a fraction (arithmetically) as “One or more aliquot parts of a unit or integer.” Comparing these accepted definitions, it is apparent that both express the same idea — some proportion of a whole. Only the mode of expression differs. In the context of this Act, the distinction made by the defendant seems to be one “without a difference.”
It is an established principle of statutory construction that a legislative enactment must- be read as a whole and the reasonable and usual meaning given to the language found. Lynch v. Alworth-Stephens Co., 267 U. S. 364, 370. Reading the Act of August. 10, 1946, as a whole, the intent of Congress appears to have been to allow enlisted men retired or released to inactive duty and then recalled for *510 an extended period of active duty, to count, their wartime service in the computation of retirement pay in the same manner as if their actual-duty status had been continuous. It does not appear that there was an attempt to distinguish between a person released under Section 203 and one released under Section 204. For many years Congress has evidenced a policy of retaining for. an enlisted man any benefits held out to him at the time of enlistment, and later abolished or modified for those enlisting at a later date. To hold now that Congress would make an arbitrary distinction having the effect of forcing a man released to inactive duty under Section 203 either to give up the benefits of Section 208 or to compute his retirement pay under a formula different from that held out to him at the time of enlistment, involves both a strained interpretation of the statute and one at variance with demonstrated Congressional policy. . .
We are of the opinion that the plaintiff is entitled to retainer or retired pay from July 11, 1945, to date of judgment herein, based upon one-half base pay at time of retirement, plus all permanent additions thereto because of longevity, plus 10 per centum for good conduct,[1] and judgment therefor will be entered in his favor. ■ The entry of judgment, however, is suspended pending the filing of a computation by the General Accounting Office of the exact amount to which plaintiff is entitled. It is so ordered.
Howell, Judge; MaddeN, Judge; Whitaker, Judge; and J.ONES, Chief Judge, concur.
In accordance with the above opinion, and on a report from the General Accounting Office, and on plaintiff’s motion for judgment, it was ordered November 6, 1951, that judg- , ment- for plaintiff be entered for $2,140.20.

 It is nowhere contended that plaintiff is not entitled to good conduct pay provided the requisite 20 years’ active duty time' may be counted. Plaintiff’s ■conduct marks are above the minimum requirement. -