**Charles G. HULSE**

v.

**The UNITED STATES.**

No. 408-52.

United States Court of Claims.

Jan. 31, 1956.

Frederick W. Shields, Washington, D. C., for plaintiff. Calvin H. Childress, Arlington, Va., and King & King, Washington, D. C., were on the briefs.

Kendall M. Barnes, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant. Arthur E. Fay, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff sues for increased retired pay which, he says, is due him under certain statutes for long service in the Navy. He first enlisted in the Navy on May 17, 1915, and served continuously under successive enlistments until July 1, 1931, when he was transferred to the Fleet Reserve, credited with 16 years or more of active service. He was immediately recalled to active duty and served continuously until December 8, 1945, when he was released to inactive duty. Upon his release to inactive duty he was paid retired pay based upon one-third of his active duty pay as increased 50 percent for longevity. This pay was based upon section 203 of the Naval Reserve Act of June 25, 1938, 52 Stat. 1175, 1178, 34 U.S.C.A. § 854b.

The Naval Reserve Act of 1938 was amended by the Act of August 10, 1946, 60 Stat. 993, 34 U.S.C.A. § 854c, and the plaintiff claims that by that Act he was given increased retired pay which he has not received and for which he now sues. His suit is in the alternative. He says

that he is entitled, under section 204 of the Naval Reserve Act of 1938, as amended by the Act of August 10, 1946, to 2½ percent of his base and longevity pay multiplied by the number of years (30) of his active service. If he is not entitled to that, he claims, in the alternative, under section 203 of the 1938 Act, one-half the base pay he was receiving at the time of transfer to the Fleet Reserve, plus all permanent additions thereto, plus 10 percent for good conduct marks.

Section 203 is applicable to men who enlisted in the Navy on or before July 1, 1925, and section 204, in general, is applicable to men who enlisted after that date. The reason for the different treatment is that by the Act of February 28, 1925, effective July 1, 1925, 43 Stat. 1080, the privilege of transfer to the Fleet Reserve after only 16 years of service, which privilege seamen had had under the Act of August 29, 1916, 39 Stat. 557, was taken away, as to those who should enlist in the future, but the rights of those who had enlisted before July 1, 1925, in reliance upon the law as it then was, were preserved in the 1925 Act, and again in section 203 of the 1938 Act. A fuller discussion of the history of this legislation appears in this court's opinion in Sanders v. United States, 120 Ct.Cl. 501.

The plaintiff's preference, as between his alternative claims, is for the rights granted by section 204, as amended, which reads as follows, except for omissions of irrelevant parts:

"Sec. 204. Members of the Navy who first enlisted in the Navy after July 1, 1925, or who reenlisted therein after July 1, 1925, having been out of the Regular Navy for more than three months, may upon their own request be transferred to the Fleet Reserve upon the completion of at least twenty years' active Federal service. After such transfer, except when on active duty, they shall be paid at the annual rate of 2½ per centum of the annual base and longevity pay they are receiving at the time of transfer mul-

tiplied by the number of years of active Federal service: * * * *Provided further,* That the pay authorized in this section shall not exceed 75 per centum of the active-duty base and longevity pay they were receiving at the time of transfer: *Provided further,* That all enlisted men transferred to the Fleet Reserve in accordance with the provisions of this section and of sections 1 and 203 of this Act shall, upon completion of thirty years' service, be transferred to the retired list of the Regular Navy, with the pay they were then legally entitled to receive: *Provided further,* That nothing contained within this section shall be construed to prevent persons who qualify for transfer to the Fleet Reserve under the provisions of section 203 of this Act from being transferred in accordance with the provisions of this section if they so elect: * * * *And provided further,* That the provisions of this section shall apply to all persons of the class described herein heretofore or hereafter transferred to the Fleet Reserve, except that no increase in pay or allowances shall be deemed to have accrued prior to the date of the enactment of this amendment. * * * "

The plaintiff, in support of his claim that section 204 applies to him, points to the 4th proviso which says that "all enlisted men transferred to the Fleet Reserve in accordance with the provisions of * * * section * * * 203 of this Act shall, upon completion of thirty years' service, be transferred to the retired list of the Regular Navy, with the pay they were then legally entitled to receive". The plaintiff was transferred to the Fleet Reserve in 1931 in accordance with the provisions of section 203, which permitted such transfer after 16 years of service; and then went on to complete more than 30 years of active service.

The plaintiff points to the 5th proviso of section 204 which says that persons

who qualify for transfer to the Fleet Reserve under section 203 may elect to transfer under section 204. This apparently means persons who qualify under section 203 and also under section 204.

The plaintiff points also to the final proviso which says that section 204 shall apply to all persons of the class described herein, "heretofore or hereafter" transferred to the Fleet Reserve. He says that the fact that he transferred to the Fleet Reserve in 1931 does not disqualify him to claim the benefits of section 204.

The Government urges that the plaintiff is not covered by section 204, and points to the language at the beginning of the section which, it says, limits the application of the section to persons who first enlisted in the Navy after July 1, 1925, or who reenlisted thereafter after a break of more than three months in their service. The Government urges that only persons answering this description are covered by the section. The plaintiff does not answer this description. His service was continuous from 1915 until 1945.

We think that the persons described at the beginning of section 204 are not the only persons covered by the section. It is more usual practice to use provisos to exclude from the operation of statutes persons or situations which would otherwise be covered by their general language. But in this statute the fourth, fifth, and final provisos seem to us to cover persons not covered by the description at the beginning. The fifth proviso says plainly that persons who qualify for transfer to the Fleet Reserve under section 203 may elect to be transferred under section 204. But a person who qualified under 203 must have enlisted before July 1, 1925, and therefore could not qualify for 204 under the language used at the beginning of 204.

Congress put section 204 on an elective basis for the section 203 men because, under certain circumstances, a man with 20 years or more of service would get more on the section 203 basis of one-half of the base pay plus permanent additions, plus 10 percent for good conduct, than he would get on the section 204 basis of 2½ percent of base and longevity pay multiplied by the number of years of service. See 92 Cong. Rec. 10354, where a proposal to make section 204 mandatory for men with 20 years of service was stricken out of the bill, the Senator in charge of the bill saying, as to the offered amendments, "They merely seek to preserve existing rights."

The Government urges that, for some reason, the plaintiff has made his election to take the benefits of section 204 too late. We think not. The legislation is confusing, the Government is even now urging that the plaintiff had no right to the benefits of section 204, and we think a Navy man cannot be charged with laches because he is not more adept in the interpretation of statutes than are the Government's lawyers.

The plaintiff is entitled to have his retired pay computed on the basis of section 204 of the Naval Reserve Act of 1938, as amended by section 2 of the Act of August 10, 1946, supra, from August 10, 1946, to the date of judgment. For the period between his release to inactive duty on December 8, 1945, and August 9, 1946, he received retired pay based upon one-third of his base pay as increased 50 percent for longevity. This pay was computed on the basis provided in section 203 for men who transfer to the Fleet Reserve, as the plaintiff did, after 16 years of service. The plaintiff claims that section 208 of the Act of June 25, 1938, added by section 3 of the Act of August 10, 1946, 60 Stat. 994, 34 U.S.C.A. § 854g, entitles him to have his retired pay computed upon the basis of half-pay plus permanent additions thereto, as increased by 10 percent on account of good conduct.

Since we have held, above, that for the period beginning with August 10, 1046, the plaintiff is entitled to the benefits of section 204, the problem as to the applicability of section 208 arises only with reference to the period Decem-

ber 8, 1945, the date of his release to inactive duty, to August 9, 1946, the day preceding the beginning of his rights under section 204. This question was considered and decided as the plaintiff would have us decide it, in Sanders v. United States, 120 Ct.Cl. 501. The Government does not ask us to reconsider that decision, except as to one point, hereinafter discussed.

The holding in the Sanders case was that section 208, added to the Naval Reserve Act by the Act of August 10, 1946, authorized the addition of the time spent in active duty after transfer to the Fleet Reserve, for the purpose of determining whether seamen should receive, as retired or retainer pay, under section 203, one-third pay based on 16 but less than 20 years of service or one-half pay based on 20 or more years of service. The Government argued in that case that since section 208 spoke of percentages and not of fractions, it did not apply to pay determined by fractions. In the Sanders case the court held that the plaintiff was entitled to have, as retired pay, one-half the sum of his base pay plus 35 percent for longevity plus 10 percent for good conduct.

The pertinent language of section 203 is:

"\* \* \* one-half of \* \* \* base pay \* \* \* plus all permanent additions thereto: *Provided,* That the pay authorized in this section shall be increased 10 per centum for all men who may be credited with extraordinary heroism in the line of duty or whose average marks in conduct for twenty or more years shall be not less than 95 per centum of the maximum: \* \* \*."

In the original briefing and argument of the Sanders case the question of the 10 percent increase for good conduct was not raised. The court's opinion did not discuss the question, but said, in a footnote, 120 Ct.Cl. at page 510:

"It is nowhere contended that plaintiff is not entitled to good conduct pay provided the requisite 20 years' active duty time may be counted. Plaintiff's conduct marks are above the minimum requirement."

Entry of judgment in the Sanders case was suspended pending the filing of a computation by the General Accounting Office of the exact amount to which the plaintiff was entitled. In its response transmitting the computation, the General Accounting Office stated that it thought the court was in error in allowing the good conduct pay, and that it was not willing to authorize the Navy to compute the retired pay of other persons on that basis. See 32 Comp. Gen. 159.

After receiving the report from the General Accounting Office this court, on its own motion, vacated and withdrew its decision and opinion, and remanded the case, requesting briefs and argument on the question of the good conduct pay. After considering the briefs and argument, the court reinstated its earlier decision, without any change. The Government urges us to reconsider the question of the good conduct pay.

We have quoted above what section 203 says about additions to base pay, for the purpose of determining retired pay. Section 208, on which the plaintiff's right is based, was, as we have seen, not enacted until August 10, 1946, after all the plaintiff's active service was over. It was, it may be noted, expressly made applicable to persons who had been retired before its enactment. But it created a new right, the right to count active service performed after transfer to the Fleet Reserve, and it is on the basis of that new right that persons like Sanders and the plaintiff get half-pay rather than one-third pay. That being so, Congress could, without breach of faith with those who had served before section 208 was enacted, impose whatever conditions or limitations it thought wise upon the new right.

If section 208 had said that, in counting length of service for the application of section 203, all active duty, whether before or after transfer to the Fleet Reserve should count, then section 203, which provides for good conduct pay, as

**750**

well as longevity pay and heroism pay, would be the measuring rod for computing the pay. But in section 208 Congress said that the retired pay granted by that section should:

> "* * * be based on the enlisted pay received by them at the time they resume an inactive-duty status, including increases in consequence of advancement in rating, longevity, and extraordinary heroism: * * *."

Thus section 208, instead of repeating the language of section 203 "pay at the rate of one-third the base pay they were receiving at the time of transfer, plus all permanent additions thereto" provides for basing retired pay "on the enlisted pay received by them at the time they resume an inactive-duty status, including * * *." We mention this change of language, though it may not, in most cases, have affected the amount of the pay, because it shows that the draftsmen of section 208 gave particular attention to modifying, and not merely copying, the language of section 203. That being so, their express mention of the bonus for extraordinary heroism and their omission to mention the bonus for good conduct seems quite pointed.

The plaintiff urges that the word "including" was used here in the sense of "for example." But the things mentioned were not mere examples of a number of things in *pari materia* that would be relevant. They were all of the things that could be relevant, except one, and that one was also expressly mentioned in section 203, to which they must have turned their attention in drafting section 208.

No reason for the omission of good conduct pay in section 208 has been suggested, and none occurs to us. It may have been inadvertent, an error in dictating or in copying. Whatever was the cause of its omission, we think it is not properly within our province to insert the omitted language. Upon reconsideration, therefore, we overrule that part of the Sanders decision which awarded good conduct pay. The plaintiff is entitled to recover, and his motion for summary judgment is granted. Entry of judgment is suspended pending the filing of a computation by the General Accounting Office showing the amount due in accordance with this opinion.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.