Harrison G. TRAVIS
v.
The UNITED STATES.
No. 5-53.

United States Court of Claims.
Dec. 5, 1956.

Samuel T. Ansell, Jr., Washington, D. C., for plaintiff. Harry E. Wood and Ansell & Ansell, Washington, D. C., on the briefs.

Lawrence S. Smith, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Alfred J. Kovell, Washington, D. C., on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

On March 6, 1956, on plaintiff's and defendant's cross-motions for summary judgment, the court rendered an opinion adverse to both claims stated by plaintiff in his petition. Judgment was entered overruling plaintiff's motion, and granting defendant's motion for summary judgment dismissing the petition.

In plaintiff's original motion for summary judgment and in his present motion for new trial, he claims that under applicable law he was entitled to receive more disability retired pay than he has been paid. His suit consists of two separate claims, one covering the period from June 18, 1947, the date of his final retirement, to the effective date, October 1, 1949, of the Career Compensation Act of 1949, 63 Stat. 802, 37 U.S.C.A. § 231 et seq. His other claim covers the period subsequent to the enactment of the Career Compensation Act to date of judgment.

The facts are not in dispute. From June 14, 1918 to June 15, 1920, plaintiff served as a cadet in the United States Military Academy. From July 2, 1920 to February 24, 1925, plaintiff served on active duty in the Regular Army, a period of approximately four and one-half years. On February 24, 1925, plaintiff was retired for service incurred disability and remained on the disability retired list for 16 years, 10 months and 20 days. On January 15, 1942, plaintiff was recalled to active duty. On April 9, 1946, while serving in the temporary grade of lieutenant colonel on active duty, plaintiff became additionally disabled. On June 18, 1947, while serving on active duty in the temporary grade of full colonel, plaintiff was re-retired by reason of the additional disability incurred during the previous year. Upon his retirement plaintiff had 10 years and 27 days of active duty service to his credit and 16 years, 10 months and 20 days of service on the retired list, making a total of inactive and active service of 26 years, 11 months and 17 days, not including the two years spent as a cadet in the United States Military Academy.

Upon the occasion of plaintiff's re-retirement on June 18, 1947, he was promoted on the retired list to the grade of lieutenant colonel which was the grade in which he had been serving on active duty when, on April 9, 1946, he incurred the additional disability which resulted in his re-retirement.

Upon plaintiff's re-retirement in 1947 his disability retired pay was computed by taking 75 percent of his base pay as a lieutenant colonel, increased for longevity by 15 percent, representing only his years of active service. Longevity pay was computed by allowing 5 percent for each three years of service and plaintiff had had slightly more than 10 years of active service.

The above computation was made in accordance with paragraph 2 of section 15 of the Pay Readjustment Act of June 16, 1942, 56 Stat. 359, U.S.Code Cong. Service 1942, p. 567, as amended, 60 Stat. 343, U.S.Code Cong.Service, p. 335, and also in accordance with section 4 of the Act of June 29, 1943, 57 Stat. 249, 10 U.S.C.A. § 985c. The above provision of the 1942 Act permitted longevity pay only for time served on active duty, and the 1943 Act provided that an officer re-retired for additional physical disability incurred while serving under a temporary appointment in a higher grade than the one in which he had previously been carried on the disability retired list should be promoted to such higher grade and receive the retired pay computed as otherwise provided by law for officers of such higher grade.

As noted above, plaintiff was serving in the temporary higher grade of lieutenant colonel when he incurred additional physical disability in 1946 and, accordingly, the Army promoted him to that grade on the retired list and based his pay on the pay of the grade of lieutenant colonel. It is conceded that what the Army did was strictly in accordance with paragraph 2 of section 15 of the 1942 Act, and with section 4 of the 1943 Act. But plaintiff contends that the circumstances in his case rendered him eligible for the greater benefits conferred by other provision of those two Acts.

Paragraph 4 of section 15 of the 1942 Act, supra, 37 U.S.C.A. § 115, provided that the retired pay of an officer who had served "in any capacity as a member of the military or naval forces of the United States prior to November 12, 1918,"

and who was retired subsequent to the enactment of the 1942 Act, was entitled to receive 75 percent of the amount of his *active duty pay* which he was receiving at the time of his retirement. Active duty pay consists of the base pay of the grade or rank held plus longevity increases for all periods during which the officer held commissions, and this included both active and inactive duty time. See the Act of December 2, 1942, 56 Stat. 1037, U.S.Code Cong.Service 1942, p. 1752, amending the Pay Readjustment Act of June 16, 1942, supra.

Section 8 of the act of June 29, 1943, supra, 10 U.S.C.A. § 985g, provided that nothing in that act should be construed to affect the right of any officer of the Regular Army to have the retired pay of a higher grade "than herein provided" (referring to section 4 noted above) if entitled to such higher pay under other provisions of law.

It was plaintiff's contention that he was entitled to higher retired pay than that provided for under paragraph 2 of section 15 of the 1942 Act and section 4 of the 1943 Act, because he had served in some capacity, i. e., as a cadet in the United States Military Academy, prior to November 12, 1918. Plaintiff urged that such service entitled him to the benefits of paragraph 4 of section 15 of the 1942 Act and that his retired pay should have been 75 percent of the active duty pay of which he was in receipt at the time of his retirement. His active duty pay at that time was the base pay of a full colonel increased by 40 percent for longevity representing his 26 years and 11 months of active and inactive duty, not counting his two years of 'service as a cadet.

The defendant contended and the court on March 6, 1956, held that plaintiff's service as a cadet in the Military Academy prior to November 12, 1918, was not service "in any capacity as a member of the military * * * forces of the United States," relying on our previous decision in Gilmartin v. United States, 109 F.Supp. 255, 256, 124 Ct.Cl. 434. The opinion in both cases based this conclusion on a provision in the Army Appropriation Act of August 24, 1912, 37 Stat. 569, 594, which provided as follows:

"Sec. 6. That hereafter the service of a cadet who may hereafter be appointed to the United States Military Academy or to the Naval Academy shall not be counted in computing for any purpose *the length of service* of any officer of the Army." [Italics supplied.]

Neither Gilmartin nor plaintiff herein were attempting to count their services as cadet in computing their length of service, but the majority of the court held that section 6 of the 1912 Act meant that service as a cadet was not service in the military forces. Upon reconsideration we now agree with the views expressed by Judge Whitaker in his dissent in the Gilmartin case, in which he pointed out that a cadet in the Military or Naval academies has always been considered to be a member of the military forces of the United States and that section 6 of the 1912 Act does not change the status of such cadet. In United States v. Noce, 268 U.S. 613, 45 S.Ct. 610, 69 L.Ed. 1116, cited in Gilmartin, the only issue was whether the time served as a cadet could be counted in computing longevity increases, i. e., length of service, and the Supreme Court held that section 6 of the 1912 Act prohibited the counting of such time. The Supreme Court did not hold that service as a cadet was not service as a member of the United States military forces. We do not believe that section 6 of the 1912 Act requires a holding that cadet service is not military service. Such an interpretation of that section would require it to be read as if it said:

"That hereafter the service of a cadet who may hereafter be appointed to the United States Military Academy * * * *shall not be deemed to be service in any capacity in the military forces of the United States and* shall not be counted in computing for any purpose the length of service of any officer of the Army."

The italicized material is interpolated to express the meaning which such an interpretation would require.

■ We accordingly overrule our holding in the Gilmartin case and hold that while the time spent as a cadet in the Military Academy may not be counted in computing length of service, such service is service in the military forces of the United States. Accordingly, plaintiff Travis, is entitled to recover on his claim for additional retired pay under paragraph 4 of section 15 of the Act of June 16, 1942, as amended by the Act of December 2, 1942. Plaintiff's recovery will be for the amount of the difference between the retired pay he received, which was computed on the basis of 75 percent of the base pay of a lieutenant colonel increased by 15 percent for over 10 years of active duty service, and the retired pay he should have received computed on the basis of 75 percent of the base pay for a full colonel increased by 40 percent longevity for over 26 years of active and inactive service (not including the two years he spent as a cadet). Plaintiff is entitled to recover this additional retired pay because he served in the Military forces of the United States prior to November 12, 1918. The period covered by this claim is from the date of his re-retirement on June 18, 1947, to the effective date, October 1, 1949, of the Career Compensation Act.

Plaintiff's second claim is based on new rights which he says he acquired by virtue of Title IV of the Career Compensation Act of 1949, supra, 37 U.S.C.A. § 271 et seq. That act provided, among other things, for higher basic rates of pay, and permitted retired pay to be computed on the basis of such new and higher rates. Title IV provided in general for disability retirement and disability retirement pay. Section 402(d) provided for the manner in which such disability retirement pay might be computed, offering, to persons retired under earlier portions of that section, several elections as to the manner of computation. Plaintiff contended that he was en-titled to have his retired pay computed under section 402(d) but the court held in our previous opinion that because plaintiff was retired prior to the effective date of the act, he was not entitled to the benefit of section 402(d) because that section operated prospectively. It is true that the language of section 402(d) is prospective, but, as pointed out by plaintiff, section 411 of Title IV of the act extends the benefit of that title to persons who, like plaintiff, were retired for physical disability *prior* to the effective date of that act. Section 411 provides in pertinent part as follows:

"* * * (1) any member or former member of the uniformed services *heretofore* retired by reason of physical disability and now receiving or entitled to receive retired or retirement pay; (2) any former member of the uniformed services heretofore granted or entitled to receive retirement pay for physical disability; * * * may elect within the five-year period following the effective date of this title, (A) to qualify for disability retirement pay under the provisions of this act and, dependent upon his qualification, shall be entitled to receive either the disability retirement pay or the disability severance pay *prescribed in this title:* * * * or (B) to receive retired pay or retirement pay computed by one of the two methods contained in section 511 of this Act: * * * [Italics supplied.]

Section 402(d) of Title IV, which constitutes election (A) above, prescribes three different methods of computing disability retired pay. Section 511 in Title V, which constitutes election (B) above, prescribes two methods of computing retired pay. Section 511 is not applicable to disabled retired persons but section 411 of Title IV permits persons retired for disability prior to the effective date of the Act to recompute their retired pay in the manner prescribed in section 511 for non-disabled retired persons. Both section 402(d) and section

511 permit an officer, who has served in a higher temporary rank in a manner deemed by the secretary concerned to be satisfactory, to use the basic monthly pay of such higher rank in computing his retired pay.

Plaintiff urges that he is entitled, by virtue of section 411, to receive retired pay computed under the second method prescribed in section 402(d), i. e., the monthly basic pay of the rank, grade, or rating held by him at the time of his retirement, which was the monthly basic pay of a full colonel increased by 40 percent for longevity, multiplied by the percentage of disability which he was certified to have incurred at the time of his retirement. In plaintiff's case his disability had been determined to be 60 percent.

Although the language of section 402 (d) is prospective, section 411 clearly permits persons retired for disability prior to the effective date of the Act the right to have their disability retired pay computed according to any of the methods prescribed in section 402(d). Section 411 also gives to persons retired for disability prior to the effective date of the 1949 Act the right to have their retired pay computed under either of the two methods prescribed in section 511, which section, in the absence of section 411, would be applicable only to persons retired for reasons other than physical disability.

We are of the opinion that plaintiff is entitled to have his retired pay computed in the manner provided in section 402(d) (2) for the period beginning with the effective date of the Career Compensation Act. This is consistent with our decision in Bailey v. United States, Ct.Cl., 146 F.Supp. 843, on facts which are in all material respects identical with the facts of plaintiff's second claim herein. Bailey was serving in the temporary grade of full colonel at the time of his retirement but he claimed in his suit only the right to have his disability retired pay computed on the basis of the active duty pay of a lieutenant colonel. We do not think this matter is of any importance under the terms of sections 402(d) and 411, or that this fact makes our holding in the Bailey case inapplicable. Why Bailey did not ask to have his disability retired pay computed on the basis of the active duty pay of which he was in receipt when he was retired, i. e., the active duty pay of a full colonel, is not explained in the record of that case; it may have been because Bailey's service in that grade had not been deemed satisfactory by the secretary of the service involved. Bailey did not show a certificate of satisfactory service. If Bailey's service in the temporary grade of full colonel had been satisfactory in the opinion of the secretary, he would have been entitled to have his retired pay based on the active duty pay of that grade.

■ Colonel Travis received a notice that he had served satisfactorily from January 15, 1942 to June 18, 1947. During the latter part of the period during which the secretary concerned certified that he had served satisfactorily, Colonel Travis was serving in the temporary grade of full colonel. He was serving and receiving the active duty pay of a full colonel (including longevity credit for over 26 years of service) on the date of his retirement and, accordingly, he is entitled under section 402 of the 1949 Act to have his disability retired pay computed on the basis of the active duty pay of the grade of a full colonel with over 26 years of service.

In the court's previous opinion of March 6, 1956, in this case, it was indicated that because plaintiff exercised his election under section 411 of the Career Compensation Act to continue to receive the retired pay authorized by law in effect on the day prior to the enactment of the 1949 Act, he is bound by such election and may not now claim the benefits of the 1949 Act. We think this holding was in error for several reasons. Section 411 of the 1949 Act provides that *pursuant to such regulations as the President may prescribe,* a person in plaintiff's category may elect within the five-year period following the effective

date of the Act "to qualify" for the disability retirement pay provided for under the 1949 Act. It then provided that if a person does elect to so qualify he "shall be entitled to receive" either the disability retired pay prescribed in Title IV or retired pay computed in the manner prescribed in section 511 of Title V of the 1949 Act. On April 25, 1950, Executive Order No. 10124, 15 F.R. 2375, quoted in Title 37 U.S.C.A. following § 281, was issued as a regulation "governing the election, as authorized by the said section 411" of members and former members of the uniformed services to receive disability retirement pay under Title IV of the 1949 Act or to receive retired pay computed by one of the two methods contained in section 511 of the same Act. Section 2 of this Executive Order regulation provided in pertinent part as follows:

> "The Secretary concerned *shall determine and inform* each member and each former member of the uniformed service or services under his jurisdiction of (a) the status and *benefits to which such person is* or may be *entitled* under the alternative clauses (A) and (B) of section 411 of the Career Compensation Act of 1949, (b) his right to make an election of benefit thereunder within the five-year period beginning October 1, 1949, * * *. [Italics supplied.]

Section 3 of the Executive Order regulation provided that members and former members of the services to whom section 411 of the 1949 Act applied would continue to receive the retired pay in the amount authorized by law in effect on the date *prior* to the effective date of the Career Compensation Act unless they elected to take the 1949 Act benefits within five years of October 1, 1949, and qualified therefor.

On July 18, 1950, pursuant to section 2 of the above Executive Order, the Adjutant General of the Army wrote to plaintiff a letter in which he purported to "determine and inform" plaintiff of his "status" under the 1949 Act and of the benefits to which plaintiff was entitled under the alternative clauses of section 411 of that Act. He advised plaintiff that he was 60 percent disabled and that he had had 10 years of active service to his credit. The letter then informed plaintiff that under the 1949 Act he was entitled to receive $273.60 under the 1949 Act computed on the percentage of disability basis, or $114 under the "length of service" basis, or that he could elect to continue to receive the $276.72 he was then receiving under the "old pay schedule." The letter then advised plaintiff that unless he elected to accept one of the two amounts which the Army believed him to be entitled under the 1949 Act, he would continue to be paid his "old pay schedule" retired pay. Inasmuch as plaintiff's old pay schedule retired pay was greater in amount than the two alternatives which the Army told him he was entitled to receive under the 1949 Act, plaintiff did not elect to receive such smaller retired pay.

We are of the opinion that in the above letter of July 18, 1950, the Secretary of the Army did not comply with section 2 of Executive Order 10124, in that it did not determine and inform plaintiff of the "benefits" to which he was entitled under the 1949 Career Compensation Act but rather informed plaintiff that he was entitled to much less than that Act called for. His election to refuse to take retired pay offered him in the letter from the Adjutant General in an amount *not* authorized by section 411, did not amount to an election to refuse to accept the benefits actually authorized and required by that section of the 1949 Act. Plaintiff did not elect to forego the advantages of the 1949 Act. He merely elected to refuse retired pay *not* authorized by that Act. Under such circumstances we do not think plaintiff is bound by his election to continue to receive retired pay computed under "old law." To hold otherwise would mean that administrative and executive officials of the Government charged with correctly interpreting and administering certain legislation may defeat the purpose of the

legislation by offering to those intended by Congress to be benefited thereby something less than the legislation calls for and then ruling that if the intended beneficiary refuses to accept that which was erroneously offered he foregoes all rights under the legislation enacted for his benefit.

 Moreover, plaintiff, having discovered the error of the Army in the determination under the statute and the regulation, filed his petition herein within the five-year period mentioned in section 411 to correct the misinterpretation and misapplication of the Act and in the circumstances of this case this was a valid election relative to the true benefits granted by the statute. If an "election" in the nature of a claim is required by section 411 of the 1949 Act, then plaintiff's petition qualifies as such election. The Army, as the particular Government department involved in plaintiff's claim was aware of his claim once the petition was filed, and if that department had wished to do so, it could have granted plaintiff's request to have his retired pay computed under section 402 (d) (2) at that time. The Army has not done so but has elected to defend plaintiff's claim through its attorneys in the Department of Justice. See Hulse v. United States, 137 F.Supp. 745, 133 Ct. Cl. 848.

Plaintiff's motion for new trial is granted. Our previous judgment denying plaintiff's motion for summary judgment and granting defendant's motion for summary judgment dismissing the petition is vacated.

The defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted as to both claims. The amount of recovery will be determined pursuant to Rule 38 (c) of this court, 28 U.S.C.A.

It is so ordered.

MADDEN, Judge, concurs.

WHITAKER, Judge (concurring).

I agree with what the court has said relative to plaintiff's first claim. I also agree with its disposition of the second claim, but only on the ground that the filing of his petition in this court claiming the benefits of the Career Compensation Act constitutes the election required to be made within five years from the passage of that Act. I think it is doubtful whether plaintiff can be excused for not having made the election because of the misinformation given him by the Adjutant General, see Munro v. United States, 303 U.S. 36, 41, 58 S. Ct. 421, 82 L.Ed. 633; and Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10, but I do not think we have to decide this, because I think the filing of the petition constitutes the required election.

JONES, Chief Judge (concurring in part).

I agree with the disposition made of plaintiff's second claim on the basis stated in the concurring opinion of Judge WHITAKER.

But I wholly disagree with the action of the majority in overruling the Gilmartin case, 109 F.Supp. 255, 124 Ct.Cl. 434, which I think correctly states the law.

I do not think schooling in the United States Military and Naval Academies should be treated as service in the Army or Navy for any purpose unless it is specifically so provided. These schools are maintained wholly at Government expense. Students who receive schooling and training at State and other academies are not permitted to count such training as service in any sense. Yet such schools and academies furnish far more of our officers by number than do both the United States academies.

In fact there was such a demand for appointment to the United States academies for educational purposes, and so many were resigning as soon as they had received their commissions immediately after finishing the course that Congress found it necessary to require at least two years' actual service after graduation before the cadets were permitted to resign their commissions and leave the service.

The majority opinion seeks to draw a distinction between counting such school attendance for length of service and counting it for other purposes. But practically all pay, allowances and other perquisites are affected by length of service.

From the opinion in the case of United States v. Noce, 268 U.S. 613, at pages 617–618, 45 S.Ct. 610, at page 611, 69 L.Ed. 1116, we quote the following:

"The question whether service in either of the Academies was Army or Navy service which should count for longevity pay and retirement was a long standing issue between the officers of the Army and Navy who were graduates of the two academies on the one hand and the officers who were not graduates and the accounting officers of the Treasury on the other. This is evident from the decision of this court in United States v. Morton, 112 U.S. 1, 5 S.Ct. 1, 28 L.Ed. 613, and United States v. Watson, 130 U.S. 80, 9 S.Ct. 430, 32 L.Ed. 852. The legislative history of the act of 1912 and that of 1913 shows that the question was much contested between the two houses. The Report of the House Committee on Military Affairs (H. R. 270, 62nd Congress, 2nd Sess.) gives an extended argument against the practice of computing cadet service for pay and retirement purposes. It said:

" 'The result of this practice is that a graduate of the Military Academy who was appointed a second lieutenant, after having been educated for that appointment for four or more years wholly at the expense of the government, receives his first 10 per cent. increase of pay after not more than one year of service as a commissioned officer, whereas the second lieutenant who is appointed from civil life, after having been fitted for the appointment wholly at his own expense, must serve for five full years as a commissioned officer before he can receive his first 10 per cent. increase of pay. And the same disparity between the two cases continues to the end.' "

"After pointing out other discriminations arising from this practice, the report continues:

" 'It is but just to say that this preposterous practice did not originate with the War Department. It was the result of a decision rendered by the Supreme Court October 27, 1884 (United States v. Morton, 112 U.S. 1, [5 S.Ct. 1, 28 L.Ed. 613]), to the effect that the time during which a person has served as a cadet is to be regarded as "actual time of service in the army." * * *'

"After referring specifically to retirement, the report says:

" 'These are additional discriminations against the civilian appointee who pays for his own preliminary education and in favor of the graduate of the Military Academy who is educated for his commission at the expense of the government.'

"In view of this long-continued controversy which before 1912 had finally been settled only by two decisions of this court, it is inconceivable that the two acts of 1912 and 1913, nullifying the effect of those decisions, and passed after a heated struggle, should have been repealed without mention of the cadet service in the proviso now said to have worked this result."

I think the Congress in enacting section 6 of the Act of August 24, 1912, 37 Stat. 569, 594, especially when read in connection with the committee report, quoted above, showed clearly that the intention was to remove the manifest discrimination between the treatment given officers who had been trained at the United States academies and those trained elsewhere at their own expense; after all, these officers were in the same service.

856

LARAMORE, Judge (dissenting).

I respectfully dissent with the majority opinion as to plaintiff's first claim for the reasons given by Chief Judge JONES in his opinion concurring in part.

I disagree with the majority opinion as to plaintiff's second claim for the reason it appears that under section 411 of the Career Compensation Act of 1949, 63. Stat. 802, 823, and Executive Order No. 10124, April 25, 1950, 15 Fed.Reg. 2375,. 3 CFR 99 (1950), plaintiff elected to receive the retired pay in the amount authorized by the applicable provisions of law in effect on September 30, 1949.. Having so elected, he is bound thereby..