**William Sebastian EBINGER et al. (Henry Grissing, Plaintiff No. 79)**

v.

**The UNITED STATES.**

**No. 49615.**

United States Court of Claims.

Oct. 9, 1957.

Thomas M. Gittings, Jr., Washington, D. C., for plaintiff. Fred W. Shields and King & King, Washington, D. C., were on the briefs.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Kendall M. Barnes, Washington, D. C., was on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff, Henry Grissing,[1] sues to recover (1) increased retired pay for the period from July 2, 1936 through January 6, 1942, to which plaintiff claims he is entitled by virtue of active duty service performed for more than 6 years and 10 months between 1929 and 1936, (2) increased retired pay for the period from April 25, 1946 through September 30, 1949, to which plaintiff claims he is entitled by virtue of active duty service performed for more than 4 years and 4 months during World War II, and (3) good conduct increases for both periods. The parties agree that there is no genuine issue as to any material fact, and both have moved for summary judgment.

It is plaintiff's position that under the provisions of section 203 of the Naval Reserve Act of June 25, 1938, 52 Stat. 1175, 1178, 34 U.S.C.A. § 854b, and under the provisions of section 208 added to the 1938 Act by the Act of August 10, 1946, 60 Stat. 993, 994, 34 U.S.C.A. § 854g, he is entitled to receive increased retired pay plus good conduct increases for both periods in suit. Defendant concedes that plaintiff is entitled to the increased retired pay claimed for the period from April 25, 1946 through September 30, 1949, on the authority of the holdings of this court in Sanders v. United States, 120 Ct.Cl. 501, and Hulse v. United States, 137 F.Supp. 745, 133 Ct.Cl. 848, certiorari denied 1957, 353 U.S. 916, 77 S.Ct. 663, 1 L.Ed.2d 663. Defendant moves for summary judgment dismissing the petition in so far as it seeks to recover good conduct increases for both periods, on the ground that in the Hulse case, supra, this court has held that such increase is not permissible under section 208 of the 1946 Act. Defendant has also moved for summary judgment dismissing plaintiff's claim for increased retired pay under section 208 for the period from July 2, 1936 through January 6, 1942, on the ground that section 208 permits the counting of additional active duty performed after transfer to the Fleet Reserve only where such service is performed in time of war or national emergency, whereas the additional service of which plaintiff bases his claim for increased retired pay during this period was performed in peacetime between 1929 and 1936.

Plaintiff first enlisted in the United States Navy on August 15, 1906, and served therein through continuous terms of enlistment until July 19, 1922, when he was transferred to the Fleet Reserve with credit for 16 years' and 22 days' service for transfer purposes. Under the law then in effect, plaintiff received retainer pay computed on the basis of one-third of his base pay, plus a longevity pay increase.

On August 29, 1929, plaintiff was recalled to active duty and served thereon until July 1, 1936, when he was again released to inactive status and placed on the retired list with retired pay computed on the basis of one-third of his base pay, plus longevity pay reflecting 22 years' service.

On September 8, 1939, the President of the United States issued Proclamation No. 2352, C.F.R. (1939 Supp.) pp. 59–60, and Executive Order 8245 C.F.R. (1939 Supp.) p. 216, declaring the existence of a national emergency and authorizing the Armed Forces to increase their strength. Pursuant to such proclamation and executive order, many Fleet Reservists including this plaintiff were recalled to active duty. Plaintiff's recall to active duty took place on January 7, 1942 and he served thereon for an additional

1. There are 137 plaintiffs involved in this case. However, in the instant proceeding, only the claim of Henry Grissing, plaintiff No. 79, is before the court.

period of 4 years, 3 months and 18 days until April 24, 1946 when he was released to inactive duty for the third time. Again the Navy computed plaintiff's retired pay on the basis of one-third of his base pay, plus a longevity pay increase based on 27 years' active service.

Under the laws in effect at the times of plaintiff's three releases to inactive duty in the Fleet Reserve, a man, transferred to the Fleet Reserve after 16 or more but less than 20 years of enlisted service in the Navy, was entitled to retainer pay computed on the basis of *one-third* of his active duty pay at the time of transfer. If the transfer to the Fleet Reserve took place after more than 20 years' service in the Navy, retainer pay was computed on the basis of *one-half* active duty pay. Subsequent active duty performed by a so-called sixteen-year Fleet Reservists could not have the effect of placing that man in the twenty-year category upon release to inactive duty even where the additional active duty performed on recall was sufficient to make his total active duty in excess of 20 years, and such a man's retainer or retired pay would continue to be computed on the basis of one-third his active duty pay.[2]

On August 10, 1946, Congress enacted legislation (60 Stat. 993) amending the Naval Reserve Act of June 25, 1938, supra, and providing in section 3 thereof for the retroactive payment of increased retired pay to members of the sixteen-year Fleet Reserve who had been recalled to active duty after July 1, 1925 and served on extended active duty pursuant to such recall. It was the position of plaintiff and others similarly situated, that under section 208 (which section 3 of the 1946 Act added to the Naval Reserve Act of 1938), they became entitled to count the additional active duty performed by them on recall in the computation of their retainer or retired pay,

and if that additional time made their total active duty exceed twenty years, their retainer or retired pay should be computed on the basis of *one-half* of their active duty pay. Acting pursuant to a decision of the Comptroller General, 26 Comp. Gen. 804, 814, 815, the Navy Department declined to make any adjustment in the retired pay of plaintiff for either period in suit.[3] The adjustment requested, if it had been granted, would have given plaintiff retired pay computed on the basis of one-half of his base pay, plus longevity, rather than on the basis of one-third of his base pay, plus longevity, which he was given.

The pertinent provisions of the statutes under which plaintiff urges he is entitled to the increased retired pay for the two periods in suit and under which defendant contends plaintiff is not entitled to such increased retired pay, are set forth below.

Section 203 of the Naval Reserve Act of 1938, supra, as amended, provides:

"Men serving in the Regular Navy, who, having enlisted therein on July 1, 1925, or prior thereto, or who having been discharged therefrom prior to July 1, 1925, and reenlisted in the Regular Navy within three months from the date of discharge, or who were serving in the Naval Reserve Force on July 1, 1925, in an enrollment entered into within four months from the date of their discharge from the Regular Navy and thereafter reenlisted in the Regular Navy within three months from the date of their discharge from the Naval Reserve created by the Act of February 28, 1925, ch. 374, 43 Stat. 1080, shall be entitled to be transferred to the Fleet Reserve on the completion of sixteen or more years' naval service, and when so transferred shall, except when on active duty, be en-

---

2. Such additional active duty time was, of course, counted for longevity increases.

3. No claim is made by plaintiff for the period subsequent to September 30, 1949,

since plaintiff has been receiving the benefits of section 511 of the Career Compensation Act of October 12, 1949, 63 Stat. 804, 829, 37 U.S.C.A. § 311, since that time.

titled to receive, if they have had *sixteen but less than twenty years'* naval service, pay at the rate of *one-third* the base pay they were receiving at the time of transfer, plus all permanent additions thereto, and if they have had *twenty or more years'* naval service, pay at the rate of *one-half* of the base pay they were receiving at the time of transfer, plus all permanent additions thereto: *Provided,* That the pay authorized in this section shall be increased 10 per centum for all men * * * whose average marks in conduct for twenty or more years shall not be less than 95 per centum of the maximum: * * *." [Italics supplied.]

Section 206 of the above act, 34 U.S.C.A. § 854e provides in part:

"*In time of peace* all enlisted men transferred to the Fleet Reserve after sixteen years' or more service in the Regular Navy may be required to perform not more than two months' active service in each four-year period * * *" [Italics supplied.]

Section 208 which was added to the 1938 Act by section 3 of the Act of August 10, 1946, supra, provided:

"Whenever enlisted men of the Fleet Reserve, transferred thereto after more than sixteen years' service, or enlisted men transferred from the Fleet Reserve to the retired list of the Regular Navy, *perform active duty after July 1, 1925, such active duty, except that which they are required to perform in time of peace under section 206 of this title, shall be included in the computation* of their total service for the purpose of computing their retainer or retired pay when in an inactive-duty status, and in the computation of their retainer or retired pay all active duty so performed subsequent to the effective date of transfer to the Fleet Reserve or to the retired list shall be counted for the purpose of computing percentage rates and increases with respect to their retainer or retired pay and shall be based on the enlisted pay received by them at the time they resume an inactive-duty status, including increases in consequences of advancement in rating, longevity, and extraordinary heroism: *Provided,* That such pay shall not exceed 75 per centum of the base and longevity pay of the highest rating to which entitled under the provisions of this section: *Provided further, that active duty performed during any period of national emergency declared by the President shall be considered for the purpose of this section as not being active duty in time of peace required by section 206:* * * * *And provided further, That persons* of the classes described in this section who have been *retired or returned to an inactive duty status prior to [the date of approval of this section] shall be entitled to the benefits of this section from the date of retirement or return to an inactive duty status.*" [Italics supplied.]

As noted above, defendant has conceded that plaintiff is entitled to increased retired pay for the period beginning on the day following his release from his second period of additional active duty, i. e., from April 25, 1946 through September 30, 1949, on the authority of the holdings of this court in Sanders v. United States, and Hulse v. United States, supra. But defendant contends that if the reasoning expressed in the decisions in those cases is carried to its logical conclusion, the court must hold that plaintiff is not entitled to increased retired pay for the earlier period involved in this suit. In the Hulse and Sanders cases the plaintiffs had been transferred to the Fleet Reserve after completing sixteen years' active duty in United States Navy. Subsequently, *and during the period of national emergency* declared by the President in connection with World War II, Hulse and Sanders had been recalled to active duty and had

served thereon for an additional period of time sufficient to make their total extended active duty service in excess of twenty years. The court held that under the provisions of section 208 of the 1946 amendment to the Naval Reserve Act of 1938, both men were entitled to have their retired pay computed on the basis of *one-half* of the base pay they were receiving at the time of transfer rather than on the basis of *one-third* of such pay. While the court did comment on the fact that the additional active duty service in that case was performed in time of war and national emergency, and that Congress in enacting section 208 of the 1946 Act had certainly intended that such additional active service should be counted in computing the retired pay of the two plaintiffs, it should be remembered that there was not before the court in those cases the issue raised in this case as to whether or not additional extended active duty performed "after July 1, 1925" *but in peacetime,* may be counted in computing the retired pay of a sixteen-year Fleet Reservist who had served on such additional extended active duty. Accordingly, our comments to the effect that Congress intended that additional extended active duty *performed in wartime* should be counted in computing the retired pay of a sixteen-year Fleet Reservist may not be construed to mean that Congress did not intend to allow or require the counting of additional extended active duty performed *after July 1, 1925 and in peacetime* in the computation of retired or retainer pay of a sixteen-year Fleet Reservist.

In our opinion, the language of section 208 of the 1946 Act is clear and unambiguous and expressly requires that *all* periods of extended active duty performed by sixteen-year Fleet Reservists after July 1, 1925 be counted in computing their retainer or retired pay *whether such additional extended active duty is performed during time of national emergency or during peacetime.* This interpretation of section 208 is not only compelled by the plain language of that section but is in harmony with section 9 of the 1946 Act which provides in part as follows:

"No back pay for any period prior to the date of enactment of this Act [August 10, 1946] shall accrue to any person by reason of the enactment of this Act except as otherwise provided in section 3 [which added section 208 to the 1938 Naval Reserve Act]. * * *" 34 U.S.C.A. § 854c note.

Despite the remarkably clear language of section 208 of the 1946 Act, both parties have resorted to the legislative history of the 1946 Act to arrive at the congressional intent and purpose behind section 208 thereof, and that legislative history is at times ambiguous in so far as it relates to the increased retired pay benefits to be given for extended additional active duty performed after July 1, 1925 and in peacetime, by sixteen-year Fleet Reservists. In the early hearings and committee reports, much emphasis was placed upon the desirability of crediting, for retired pay purposes, additional active duty performed *in wartime* by men who had originally been transferred to the Fleet Reserve after only sixteen years' enlisted service in the Navy. The reason for this may lie in the fact that Congress was primarily concerned with the situation of the many sixteen-year Fleet Reservists who had been recalled to serve on extended active duty during World War II. Under existing law, as noted above, those men had to revert to inactive duty status with no increase in the percentage of their retainer or retired pay which remained that of sixteen-year Fleet Reservists, even though their combined extended active duty service might exceed twenty years. Much of that sort of legislative history can be discounted, however, in view of the fact that section 208 of the bill then under consideration did not contain the words "after July 1, 1925" in connection with *when* such additional extended active duty must be performed in order to be counted. It would seem that the insertion of that phrase at the beginning of section 208 removed any pos-

sible doubt as to the additional active duty which Congress intended should be counted in computing the retired or retainer pay of sixteen-year Fleet Reservists who had performed such additional active duty. Accordingly, despite the fact that Congress was primarily concerned with that large group of sixteen-year Fleet Reservists who served for four or more years of additional active duty in time of national emergency, the act which Congress finally passed plainly extended the benefits of section 208 to *any* Fleet Reservist who, *after July 1, 1925,* served on *extended* periods of active duty which, when added to the active duty credited toward his original transfer to the Fleet Reserve, resulted in his having served for more than twenty years, whether such additional active duty was performed during peacetime or during wartime. The only limitations which section 208 placed on the counting of active duty performed after transfer of sixteen-year men to the Fleet Reserve, were: (1) that such active duty be performed after July 1, 1925, and (2) that the two months' active duty required of all Fleet Reservists under section 206 of the 1938 Act (and its predecessor acts) might not be counted unless such *limited* active duty was performed in time of war or national emergency.

We are of the opinion that the admitted facts of plaintiff's case bring his claims (except for the good conduct pay claim) squarely within the scope of section 208 of the 1946 Act. That section first provides:

"Whenever enlisted men of the Fleet Reserve, transferred thereto after more than sixteen years' service, or enlisted men transferred from the Fleet Reserve to the retired list of the Regular Navy, perform active duty after July 1, 1925, * * *"

Plaintiff herein was an enlisted man who was transferred to the Fleet Reserve after more than sixteen years' service. He had been recalled to active duty and performed such additional active duty after July 1, 1925 for two extended periods, one in peacetime and one in wartime. Section 208 next provides:

"* * * such active duty, except that which they are required to perform in time of peace under Section 206 of this title, shall be included in the computation of their total service for the purpose of computing their retainer or retired pay when in an inactive-duty status, * * *"

Plaintiff's additional active duty performed after July 1, 1925 was *not* the active duty which he was required to perform in time of peace under section 206 of the 1938 Naval Reserve Act, i. e., the two months' active duty required in each four-year period, but was *extended* active duty for several years. The extended period of active duty performed between August 29, 1929 and July 1, 1936 was admittedly performed in peacetime, but the exclusion from the computation provided for in section 208 was not an exclusion of *all* active duty performed in peacetime, but only that active duty performed in peacetime which was required of the Fleet Reservist under section 206 of the 1938 Act. Plaintiff is not seeking to include any such two months' active service required by that section. The benefits conferred by section 208 of the 1946 Act were clearly made retroactive and plaintiff is entitled to recover the increased retired pay claimed for both periods in suit.

Defendant's motion for summary judgment is granted in so far as it relates to plaintiff's claims for good conduct pay, and the petition will be dismissed to that extent. Defendant's motion for summary judgment is denied in so far as it relates to the balance of plaintiff's claim. Plaintiff's motion for summary judgment is denied in so far as it relates to claims for good conduct pay, and is granted in so far as it relates to increased retired pay claimed for the period from July 2, 1936 through January 6, 1942, and from April 25, 1946 through September 30, 1949, and judgment will be entered to that effect. The case is remanded to a commissioner of the court

for a determination of the amount due plaintiff pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge, took no part in the consideration and decision of this case.