309 F.2d 753
 Juan S. AFLAGUE et al. (Paul F. Forster, Plaintiff, No. 13)
v.
The UNITED STATES.
Rush C. COBB et al., (George C. Ellis, Plaintiff No. 2)
v.
The UNITED STATES.
Frank Briggs WILSON
v.
The UNITED STATES.
 No. 212-56.
 No. 430-56.
 No. 465-59.
 United States Court of Claims.
 November 7, 1962.
 
 Thomas M. Gittings, Jr., Washington, D. C., for plaintiff. Fred W. Shields and King & King, Washington, D. C., were on the briefs.
 Edgar H. Twine, Washington, D. C., with whom was Asst. Atty. Gen., William H. Orrick, Jr., for defendant. LeRoy Southmayd, Jr., Paris T. Houston, and Arthur E. Fay, Washington, D. C., were on the briefs.
 DAVIS, Judge.
 
 
 1
 Three of the plaintiffs in these cases (George C. Ellis, Paul F. Forster, and Frank B. Wilson) are long-time naval enlisted men who were transferred to the Fleet Reserve prior to 1940, thereafter retired for longevity, and recalled to active duty in the emergency of the early 1940's; in 1942, 1944, and 1945, they were respectively released from this active duty by reason of physical disability and returned to inactive status on the retired list. They sue for disability retired pay under Title IV of the Career Compensation Act of 1949, 63 Stat. 802, 816, 823-24, claiming to be members of a uniformed service "heretofore retired by reason of physical disability." Both sides have moved for summary judgment and the cases can appropriately be decided at the present stage on the undisputed facts.
 
 
 2
 These three plaintiffs have had similar naval careers, each ending as a chief petty officer with about 20 years of active service. As illustrative we set forth the facts in Wilson's case, the only one in which we are able to reach the merits of the claim. He served in the Navy from May 1908 through July 1922, when he was transferred to the Fleet Reserve as a chief petty officer with credit for 14 years and 2 months service. In March 1926 he was recalled to active duty and after an additional 6 years, 4 months and 2 days of active service was again released to inactive duty (in July 1932). Having completed 30 years of active and inactive service, he was transferred from the Fleet Reserve to the retired list in June 1938. He was again recalled to active duty in July 1941. In 1945, a Board of Medical Survey found that he had a permanent physical disability (duodenal ulcer), incurred in line of duty, which would probably be aggravated by his retention in active duty. He was released to inactive status in April 1945, with credit for an additional 3 years, 8 months, and 15 days of active service (his total active service amounting to 24 years, 2 months, and 15 days). Because the Navy was of the view that enlisted men in his situation were not entitled to Retiring Board procedures these were not made available to him.
 
 
 3
 Since the Career Compensation Act became effective in October 1949, the plaintiffs have been receiving retired pay under Section 511 of that statute, 63 Stat. 802, 829, pertaining to servicemen retired for reasons other than physical disability (e. g., retirement for longevity). Their demand here is that they be considered eligible for disability retired pay under Section 411, so that they can have the opportunity to receive the higher retired pay available under the provisions of Section 402. They meet the criteria of Section 411, they claim, because they are included in one of the statutory classes to which the 1949 Act extends its disability retired pay, i. e., "any member or former member of the uniformed services heretofore retired by reason of physical disability and now receiving or entitled to receive retired or retirement pay."
 
 
 4
 We cannot decide the merits of the claims of Forster and Ellis because, so far as the record shows, they took no action, within the prescribed five-year period, to elect to qualify for disability retirement pay under the provisions of Title IV of the 1949 Act. Section 411, 63 Stat. 802, 824, expressly provided that a member of the four classes made eligible for such pay by that section "may elect within the five-year period following the effective day of this title * * * to qualify for disability retirement pay under the provisions of this Act * * *." Title IV of the 1949 Act became effective in October 1949, and Executive Order No. 10124, 15 F.R. 2375, directed that the election be made prior to October 1, 1954. The Order also declared that servicemen and former servicemen should continue to receive the retired pay authorized by the law in effect prior to the 1949 Act unless a timely election was made.[1] These provisions of the Act and the Order effectively preclude Forster and Ellis, who did nothing to make an election or vindicate their claim until well after October 1, 1954, from recovering under Title IV. See Travis v. United States, 146 F.Supp. 847, 853, 854, 137 Ct.Cl. 148, 157, 158, 159 (1956); Seliga v. United States, 149 F. Supp. 211, 215, 137 Ct.Cl. 710, 717 (1957).
 
 
 5
 These plaintiffs claim, however, that they are excused from making the election because, although the Executive Order required the Navy to inform each member or former member of the status and benefits to which he would be entitled under Section 411 and of his right to make an election, the Navy did not communicate with them (undoubtedly because in its view they were not eligible to make any election under the section). It is the plaintiffs' position that the election requirement of Section 411 is excused or tolled or deferred in all cases in which the Navy failed to give the serviceman or ex-serviceman all the pertinent information as to his rights (under Title IV) as those rights might later be determined to be, or in which the service affirmatively misadvised him as to his rights. The consequence of this argument is that the election provision would be significant only for those men who were correctly and fully informed by the appropriate service but who nevertheless failed to make a timely choice.
 
 
 6
 We cannot accept this position, at least where, as with Ellis and Forster, the service simply failed to communicate with the serviceman and to tell him that he was entitled to choose under Section 411. These are not cases (so far as we are told) in which the service affirmatively gave misinformation, by commission or omission, which induced or compelled the sailor to make a decision less favorable than that to which he was entitled under the law. See Travis v. United States, supra, 146 F.Supp. at 853-854, 137 Ct.Cl. at 157; Atkins v. United States, 158 F.Supp. 136, 137, 141 Ct.Cl. 88, 89-90 (1958); Phelan v. United States, 146 Ct.Cl. 218, 222 (1959). The Navy did nothing at all. If it were not for the direction in the Executive Order, it would be undisputed that the failure to tell plaintiffs they were eligible under Section 411 would not prevent the bar from falling at the end of the five-year period, even though they were wholly unaware of their rights. See, e. g., Dion v. United States, 137 Ct.Cl. 166, 167 (1956); Lisle v. United States, 23 Ct. Cl. 270, 273 (1888). The Executive Order, as we read it, did not superimpose, as a prerequisite to the requirement of an election, the special condition that the service correctly inform the man of his rights. This portion of the Order, addressed to the service Secretaries, was essentially directory, designed to give as wide distribution as possible to the benefits of the new legislation. We do not find any purpose to complicate the administration of the statute by demanding that the services, at peril of postponing the five-year election period, reach all those individuals who would ultimately be found eligible under Section 411 and accurately inform them of their rights. There are too many ex-servicemen possibly affected by Section 411 and too many conceivable permutations and combinations under the various bits and pieces of retirement legislation for us to believe that such was the purpose of the Executive Order. In short, mere non-compliance with the information section of the Order did not affect the five-year provision of the Act or modify the established rule that statutes of limitations are not tolled by ignorance of one's rights or of the law.
 
 
 7
 Plaintiff Wilson is more fortunate. He did make a sufficient election within five years. On December 1, 1951, he wrote the Navy requesting an evaluation of his physical disabilities under Section 411; on January 16, 1952, the Navy answered that his case did not come under the section. This exchange constituted an adequate election and adequate notice. See Travis v. United States, supra, 146 F.Supp. at 853-54, 137 Ct.Cl. at 157-58, 159. The Government asserts that his suit is nevertheless barred by the general six-year statute of limitations (28 U.S.C. § 2501) because the claim accrued when the Career Compensation Act became effective in October 1949 and Wilson's petition in this court was not filed until November 1959. As the ensuing discussion shows, we view the claim as a legal one for increased retirement pay, turning on the meaning of Section 411 of the Compensation Act and not dependent on the prior discretionary action of an executive board or agency under that statute. The suit thus falls within the ambit of the "continuing claim" doctrine (discussed in Friedman v. United States, Ct.Cl., 310 F.2d 331) and the only sums barred are those accruing more than six years prior to the bringing of the action. We are therefore required to deal with the merits of Wilson's claim.
 
 
 8
 On that issue the essential inquiry is whether the statutory classification (in Section 411), "any member or former member of the uniformed services heretofore retired by reason of physical disability and now receiving or entitled to receive retired or retirement pay," includes a sailor transferred to the Fleet Reserve in 1922 and (after another period of active service) again transferred to the Fleet Reserve in 1932, retired for 30 years longevity in 1938, recalled to active duty in 1941, and returned to inactive status on the retired list in 1945 for physical disability, as a result of a hearing before a Medical Survey Board but without conventional retirement proceedings.
 
 
 9
 The defendant says that Wilson's original retirement was for longevity and that when he was returned to inactive duty in 1945 he did not appear before a Retiring Board or follow the usual procedures for retirement (which, the Government also says, were not available at that time to enlisted men of Wilson's class). From these premises the conclusion is drawn that Section 411 must be inapplicable because it is phrased in terms of, and deals only with, the normal concept of technical retirement (by reason of physical disability), with the procedures incident to such a formal retirement.
 
 
 10
 We believe, however, that there are no adequate reasons why the terms "heretofore retired by reason of physical disability" should not be liberally interpreted to cover a former member of the Fleet Reserve in Wilson's group. There is, first, no insuperable linguistic obstacle to finding a "retirement for physical disability" in the events of 1945. The court has often found a "re-retirement" in the return to inactive status of a previously retired serviceman recalled to active duty.[2] These cases involved officers but there is no inherent reason why the same concept cannot be applied to enlisted men where appropriate; in Seliga v. United States, supra, 149 F.Supp. 211, 137 Ct.Cl. 710 (1957), the court employed in the case of an enlisted man some of the rules established in these decisions for re-retired officers. It is also clear from these cases that a return to inactive status can be deemed a retirement even though it was not so designated by the military authorities or thought of as a retirement. Nor is there any inherent reason why the reversion to inactive status for physical disability of a serviceman originally retired for length of service cannot be characterized as a "retirement by reason of physical disability." Our prior decisions do not happen to have dealt with that precise situation[3] but nothing in the opinions suggests that the initial retirement and the re-retirement must be for the same reason or that the re-retirement cannot be of a different "character." It would be entirely consonant with the principle as it has developed to apply it, in proper cases, to a return to inactive status for physical disability where the initial retirement was for longevity.
 
 
 11
 Wilson's is a proper case in which to apply the re-retirement principle to Section 411 of the Career Compensation Act of 1949. That provision clearly covers enlisted men as well as officers previously retired for disability. In that connection, it is crucial that Wilson was a former member of the Fleet Reserve, and that, some years before his return to the retired list in 1945, Congress had already indicated that enlisted members of the Fleet Reserve could be retired for physical disability. Section 206 of the Naval Reserve Act of June 25, 1938, 52 Stat. 1175, 1179-80 [see 10 U.S.C.A. § 6331], provided that enlisted men in the Fleet Reserve who were found not physically qualified for active duty should be transferred to the retired list of the Regular Navy. The plaintiff in Seliga v. United States, supra, 149 F.Supp. 211, 137 Ct.Cl. 710 (1957), a member of the Fleet Reserve, was retired under that provision after active service during World War II; and the court expressly held him entitled to have his pay computed under the disability retirement pay provisions of Sections 402 and 411 of the 1949 Act.[4] The difference between that case and Wilson's, the Government says, is that Seliga, when he reverted to inactive status on disability grounds, was still in the Fleet Reserve (because he had not yet completed the 30 years' service which would have occasioned his transfer to the retired list) and therefore he could still avail himself of the retirement rights granted by the Naval Reserve Act of 1938; Wilson, on the other hand, who completed his 30 years in 1938, had already been transferred from the Fleet Reserve to the retired list and therefore, according to the defendant's literal reading of Section 206 of the Naval Reserve Act, was no longer in the Fleet Reserve and could no longer invoke the Reserve Act when he returned to inactive status in 1945. The short of this distinction is that, of two servicemen in identical practical situations except that one has served much longer than the other, the man with the shorter service is entitled to greater rights under the Career Compensation Act as a result of that very fact. Unless compelled, we are unwilling to rest upon that extraordinary distinction.
 
 
 12
 As already indicated, we are not so bound by statute, precedent, or principle. The court is not called upon at this time to decide whether Section 206 of the Naval Reserve Act of 1938, in itself, is broad enough to authorize the disability retirement — in the most technical sense — of former Fleet Reservists, like Wilson, who had been retired for longevity and thereafter had a stint of active service ending with their return to retirement by reason of disability. But we do hold — in view of the pattern of legislation relating to the Fleet Reserve, our holding in Seliga, and the re-retirement principle — that when Section 411 of the Career Compensation Act refers generally to "any member or former member of the uniformed service heretofore retired by reason of physical disability" it covers such a former Fleet Reserve man, if there is a solid administrative finding that his return to retirement was for disability (even though normal retirement proceedings were not had).[5] In Wilson's case there is the admitted definite finding of a Board of Medical Survey, in February 1945, that he was suffering from a duodenal ulcer of probable permanent duration, incurred in line of duty, and that he was unfit for service and should be returned to the retired list. The Bureau of Medicine and Surgery recommended that he be released from active duty and classified as not physically qualified for any duty. He was, accordingly, released from active duty and classified as not physically qualified for mobilization ashore. This is a definitive enough showing that his return to retired status was by reason of physical disability.
 
 
 13
 The defendant objects that Retiring Board procedures might have resulted in a different verdict on Wilson's capacity for service, and therefore that he is being accorded a right he might not have received if he had been granted a Retiring Board (a procedure which the defendant insists, and we may assume, was unavailable at the time). This may possibly be so, but it does not follow that the words "heretofore retired by reason of physical disability" in Section 411 of the Career Compensation Act should be limited to instances where normal disability retirement proceedings have, or could have been followed. The reasons we have given for including servicemen like Wilson under Section 411 are too strong and the administrative finding of his disability is too solid to be outweighed by the mere chance that some men may obtain the benefits of the Section who would not have been covered if conventional Retiring Board procedures had been available or stricter retirement standards applied. The broad aim of Section 411 was to include retired servicemen, both officers and enlisted men, who had previously been released to retirement by reason of a disability found by some authoritative agency of the armed forces. Congress did not indicate that, for the purposes of Section 411, such a finding could be made only through Retiring Board channels even though those particular procedures had not been provided. It would run counter to the central purpose of the section to exclude men who meet the statutory standards, except that they cannot point to a special board proceeding which was not then available. Conversely, we think that it would contravene the remedial goal of Section 411 so to exalt Retiring Board procedures and standards that coverage turns upon their presence. For the same reasons, there is no need to construct an "as if" Retiring Board system for enlisted men in 1945, in order to determine, in 1962, whether Wilson would have met those hypothetical standards. The findings of the Medical Survey Board, upon which the Navy acted, are sufficient.[6]
 
 
 14
 Having completed more than 20 years of active service, Wilson is entitled to disability retirement pay, under Section 402 (f) of the Career Compensation Act, 63 Stat. 802, 820, without showing 30% disability. His right to recover is therefore independent of a determination of the extent of his disability. That percentage is important to him, however, because it bears on the comparative advantage of the two methods of computing retired pay prescribed in Section 402(d), 63 Stat. 802, 818.[7] In these circumstances, it is appropriate to follow (with some modification) the procedure adopted in Adams v. United States, 118 F.Supp. 381, 384, 127 Ct.Cl. 470, 475 (1954) — enter judgment that plaintiff Wilson is entitled to recover disability retirement pay beginning with the six years prior to his petition, and remand the case to the Trial Commissioner for further proceedings under Rule 38(c), including a reasonable opportunity for Wilson to apply to the proper board or agency to determine the percentage of his disability.
 
 
 15
 In the computation of the amount of his disability retirement pay, Wilson will be entitled to be credited with periods of inactive service in the Fleet Reserve and on the retired list before his last recall to active duty, for the purpose of determining the applicable rate of basic pay under Section 402(d). Seliga v. United States, supra, 149 F.Supp. 211, 137 Ct.Cl. 710 (1957); 39 Comp. Gen. 152 (1959). See also Bailey v. United States, supra, 146 F.Supp. 843, 134 Ct.Cl. 471 (1956); Travis v. United States, supra, 146 F.Supp. 847, 137 Ct.Cl. 148 (1956); Phelan v. United States, supra, 146 Ct.Cl. 218(1959); Heinlein v. United States, supra, Ct.Cl., No. 459-59, decided Dec. 1, 1960; 40 Comp.Gen. 639 (1961).
 
 
 16
 The plaintiffs' motion for summary judgment is denied as to plaintiffs Ellis and Forster, and the defendant's motion for summary judgment is granted as to them. As to them the petitions in Nos. 212-56 and 430-56 are dismissed. The plaintiffs' motion for summary judgment is granted as to plaintiff Wilson in No. 465-59, and judgment will be entered in his favor for the difference between disability retired pay accruing on and after November 3, 1953, and the retired pay he has been receiving, with the amount of recovery to be determined pursuant to Rule 38(c). The Trial Commissioner will give plaintiff Wilson a reasonable opportunity to apply to the proper board or agency to determine the percentage of his disability. Defendant's motion for summary judgment is denied as to plaintiff Wilson.
 
 
 17
 JONES, Chief Judge, DURFEE, LARAMORE and WHITAKER, Judges, concur.
 
 
 
 Notes:
 
 
 [1]
 The opening phrase of Section 411 authorized the President to prescribe regulations to implement the statutory terms
 
 
 [2]
 Carroll v. United States, 81 F.Supp. 268, 117 Ct.Cl. 53 (1948); Shea v. United States, 119 Ct.Cl. 53 (1951); Danielson v. United States, 102 F.Supp. 575, 121 Ct.Cl. 533 (1952); Bailey v. United States, 146 F.Supp. 843, 134 Ct.Cl. 471 (1956); Gordon v. United States, 140 F. Supp. 263, 134 Ct.Cl. 840 (1956); Travis v. United States, supra, 146 F.Supp. 847, 137 Ct.Cl. 148 (1956); Sherfey v. United States, 157 F.Supp. 936, 141 Ct.Cl. 307 (1958), cert. denied, United States v. Field, 357 U.S. 926, 78 S.Ct. 1372, 2 L.Ed. 2d 1371; Field v. United States, 158 F.Supp. 580, 141 Ct.Cl. 312 (1958), cert. denied, 357 U.S. 926, 78 S.Ct. 1372, 2 L. Ed.2d 1371; Phelan v. United States, supra, 146 Ct.Cl. 218 (1959); Heinlein v. United States, Ct.Cl., No. 459-59, decided Dec. 1, 1960; Gardner v. United States, Ct.Cl., Nos. 293-60, 294-60, 295-60, decided March 7, 1962; Menocal v. United States, Ct.Cl., 300 F.2d 920
 
 
 [3]
 The re-retirement concept has been applied to disability retirements (e. g., Danielson v. United States, supra) and to longevity retirements (e. g., Gordon v. United States, supra)
 
 
 [4]
 Seliga's disability was incurred in active service. See Juan S. Aflague, et al. (Ernest W. Greaves No. 14) v. United States, Ct.Cl., 298 F.2d 446, for the rights of such a serviceman whose disability was not service-incurred
 
 
 [5]
 There are indications in the Career Compensation Act, itself, that Section 411 should be given this interpretation. A proviso in Section 402(d) gives the right to Title IV disability pay to servicemen retired for any reason who incur disability during a period of recall to active dutyafter the effective date of the Career Compensation Act. If plaintiff Wilson's recall to active service had been during the Korean hostilities, and he had become disabled, he would plainly be entitled to disability retirement pay under Title IV. There is reason to believe that the general aim of Congress was to treat disabled persons who retired before the passage of the Act and those who retired thereafter as nearly alike as possible. Moreover, a proviso to Section 411 directs that determination of the percentage of disability should be based on disability "as of the time he was last retired or as of the time he was granted retirement pay, as the case may be" (emphasis added); this suggests, though it does not prove, that Congress was specifically aware that servicemen often returned to the retired list after an interim period of active duty.
 We find nothing in the legislative history of Title IV out of harmony with the conclusions we reach.
 
 
 [6]
 From the materials presented to us it appears probable that the plaintiff in Seliga v. United States, supra, was not given a Retiring Board when retired in 1945 but was considered by the Navy to be retired for physical disability on the basis of the findings of a Board of Medical Survey
 
 
 [7]
 Under Section 402(h), 63 Stat. 802, 820, the percentage rating can also affect the impact of the income tax on disability retired pay