Laeamoee, Judge,
delivered the opinion of the court:
This is an action for disability retirement pay. Plaintiff is a former Navy enlisted man and temporary Warrant Officer who was first retired in 1942 for longevity but retained in emergency wartime service and re-retired in 1946. He seeks through this suit to make the election between disability retirement and general retirement pay which section 411 of the Career Compensation Act of 1949, 63 Stat. 802, 823-824, affords former members of the uniformed services theretofore retired “by reason of physical disability,” contending that his re-retirement was by reason of such disability.
Plaintiff first served several enlistments from 1913 to 1929 which were separated by only very brief periods of return to civilian life. At three separate times during this service it was diagnosed that he was suffering from arthritis— “signs of beginning arthritis” were first detected in April of 1926; he was hospitalized at the naval dispensary at Guantanamo Bay in May of the following year with an admitting diagnosis of acute arthritis (service-incurred and resulting in swelling of the ankles and in persistent pain in the right arm and shoulder); and his transfer from Cuba to a hospital within the United States for continued treatment was likewise effected on the basis of a diagnosis of acute arthritis. Having compiled the requisite 16 years of active service, plaintiff was transferred to the Fleet Reserve in the enlisted rank of Chief Petty Officer in May of 1929.
Recalled to active duty in September of 1939 after the outbreak of war in Europe, plaintiff served continuously until 1946. His first retirement took place in October 1942, when he was transferred to the retired list of the Regular Navy by reason of the completion of 30 years of naval service, *185 active and inactive, pursuant to the provisions of section 204 of the Naval Reserve Act of 1938, 52 Stat. 1175, 1179. Notwithstanding his transfer to the retired list, plaintiff continued on active duty and the next month received a temporary appointment as Commissioned Warrant Officer (Chief Pharmacist), pursuant to section 2 of the Temporary Promotions Act, 55 Stat. 603 (1941). This appointment followed a physical examination, on the basis of which the Bureau of Medicine and Surgery determined that plaintiff should be classified as physically qualified only for mobilization ashore, and in conformity with this determination all of his subsequent active service was performed at the Sampson, New York, Naval Training Center.
Plaintiff was hospitalized for eight days beginning in the last week of September 1945, at which time X-rays disclosed “considerable hyperthrophic, arthritic changes.” A complete examination performed six weeks later indicated that plaintiff was not physically qualified for release from active duty because of arterial hypertension; moreover, although a tendency to obesity had been often noted throughout his medical records, his weight in the six months preceding had increased 20 percent to 290 pounds. He was, therefore, retained in the service for treatment.
In late December 1945, plaintiff suffered a collapse — the right side of his face and his right arm temporarily paralyzed — after wandering in a confused and disorientated condition through a passageway at his quarters. An examination six hours later revealed blurring of speech, a weakness in the legs, and the absence of all reflexes. This seizure, at first thought to be a cerebral hemorrhage, was subsequently diagnosed as a cerebral arterial spasm.
Plaintiff first appeared before a Board of Medical Survey in February 1946, which, upon a determination that he was suffering from arterial hypertension (service-incurred, permanent, and rendering him unfit for further service), recommended a retiring board. For reasons not apparent from the records, however, plaintiff was directed to appear before a second Board of Medical Survey one month later, which— this time on a diagnosis of obesity (likewise not antedating service, permanent, and rendering him unfit physically for *186 continued active duty) and with additional reference to the hyperthropic arthritis detected in the earlier X-rays — -recommended as well an appearance before a retiring board.
This Medical Survey Board report was forwarded to the Bureau of Medicine and Surgery, which in March 1946 declined to order an appearance before a retiring board on two grounds: (1) that plaintiff was not entitled to retiring board proceedings because all disabilities, both obesity and the “multiplicity of other defects,” were incurred before his temporary commission while he was serving in enlisted rank; and (2) that obesity was not considered permanent. The recommendation was returned to the Medical Survey Board for further consideration and for later action if such action were found to be appropriate.
Subsequently, plaintiff was further retained for treatment for approximately one month. An X-ray examination in early April indicated that pain in his right ankle was the result of “sclerosed, markedly tortured arteries.” Thereafter, he was examined on April 15,1946 by two medical officers, who concluded that plaintiff was physically unfit for further duty on the determination that he was then suffering from chronic hyperthropic arthritis, obesity, hypertension with arteriosclerosis, and varicosities in both legs. The next day, plaintiff was declared not physically qualified for mobilization and began his terminal leave, on the expiration of which on June 12, 1946 he reverted to an inactive status on the retired list in his enlisted rank of Chief Petty Officer. On August 22,1946, he was advanced on the retired list to the rank of Warrant Officer retroactively to the June date of his re-retirement, in accordance with the provisions of section 10 of the Temporary Promotions Act, supra, as amended by section 8 ( a) of the Act of February 21,1946, 60 Stat. 26, 28. In the meantime, the Navy Department in July 1946 informed the Internal Revenue Service that no tax was being withheld from plaintiff’s retired pay for the reason that his release from active duty was on account of physical disability.
Two years after the enactment of the Career Compensation Act, supra, plaintiff in October 1951 requested that the Navy Department advise him of the status of his retired *187 pay account and was informed that be was then receiving the maximum to which he was entitled. He was told that his 1946 reversion to the retired list had not been by reason of physical disability, as a consequence of which fact his retirement pay was taxable. Plaintiff protested the Navy’s withholding of income tax by letter dated November 10, 1951, contending then as he does now that his re-retirement had in fact been by reason of disability. The Navy Department responded by suspending the withholding of tax pending a determination of his tax liability by the Internal Revenue Service. This determination was rendered in January 1953, when the Director of Internal Revenue ruled that “his retired pay is for disability.”[1] Notwithstanding this ruling by the Internal Revenue Service, the Navy Department has made no change in plaintiff’s retired pay status.
Section 411 of the Career Compensation Act, supra, under which plaintiff now seeks to elect to receive disability retirement pay, reads in pertinent part as follows:
Pursuant to such regulations as the President may prescribe, (1) any member or former member of the uniformed services heretofore retired by reason of physical disability and now receiving or entitled to re-receive retired or retirement pay * * * may elect within the five-year period following the effective date of this title, (A) to qualify for disability retirement pay * * * or (B) to receive retired pay or retirement pay * * *.
Whether plaintiff may succeed in his attempt to make this election depends on the answers to these two questions: (1) Was he eligible under the terms of section 411; (2) assuming his initial eligibility, is plaintiff now barred from electing *188 because the 5-year period following enactment of the provision has expired ?
Section 411 extends the electoral prerogative only to those former members of the uniformed services who had been retired “by reason of physical disability.” The first issue before us is whether plaintiff meets this test of eligibility.
We hold that he does meet this test; that in fact his 1946 re-retirement was by reason of physical disability.
There can be no doubt that at the time of his release plaintiff was suffering from numerous physical disabilities. The chronicle of his medical records is replete with instances in which examinations revealed these defects, among them hyperthrophic arthritis (first noted as early as 1926), obesity, and arterial hypertension. These defects were still present on the day immediately preceding the commencement of his terminal leave and were observed in the examination of that date. Plaintiff’s first Medical Survey Board reported a diagnosis of arterial hypertension — service-connected, permanent, and disabling. Most importantly, the second Medical Survey Board likewise found plaintiff to be suffering from permanent, service-connected disabilities; and while the primary diagnosis of this Board was obesity, its report also states a finding of hyperthrophic arthritis and makes reference as well to the recent cerebral arterial spasm and to the general arterial hypertension. The report of this Board constitutes a “solid administrative finding” of disability, as that phrase was used in Aflague, et al. v. United States, 159 Ct. Cl. 80, 91, 309 F. 2d 753, 758 (1962).
Defendant, however, contends that, notwithstanding plaintiff’s condition at the time, his release from active duty was occasioned not by any factor relating to that individual physical condition, but rather by the general postwar demobilization; that were it not for that condition, which made desirable his retention on active duty for treatment from November 1945 to April 1946, he would likely have been released yet earlier than he was. We must conclude that these contentions are essentially immaterial. The critical fact is this: at the time of his release, plaintiff was suffering from a multiplicity of defects, all service-incurred, permanent, and rendering him unfit for continued duty. This *189 was the definitive administrative finding of both Boards of Medical Survey which considered his condition.
Defendant further contends that, again notwithstanding plaintiff’s actual condition at the time of his release, Navy Department Regulations then in effect prevent the conclusion that his 1946 release and transfer to the retired list was by reason of physical disability. The Government cites a Navy Department Bulletin of August 15, 1945, in which the following statement appears:
* * * The regulations * * * require that no one shall be released from active duty or placed on the retired list by reason of physical disability, except upon the approved recommendation of a board of medical survey. * * *
It is defendant’s contention that because the report of the March 1946 Medical Survey Board was never formally approved by the Bureau of Medicine and Surgery it cannot be said that plaintiff’s release was by reason of disability.
We find this argument unpersuasive. The absence of a formal approval by the Bureau of Medicine and Surgery stemmed in no way from any disagreement with the Board’s medical findings. Indeed, the Bureau conceded the existence of a “multiplicity of other defects” quite in addition to the matter of obesity; rather, it stemmed from the Bureau’s view that, inasmuch as these defects were incurred in the course of plaintiff’s enlisted service and antedated his temporary appointment in 1942 as Warrant Officer, the Medical Survey Board’s recommendation that the case be referred to retiring board proceedings was inappropriate. The substance of the Bureau’s action, we hold, was tantamount to the approval of plaintiff’s re-retirement in his permanent enlisted rating for physical disability. Thus he comes within the terms of section 411 and was entitled to make the election for which that section provides.
There remains, however, the second question of whether plaintiff is now barred from making his election by reason of the passage of five years since the effective date of the Career Compensation Act. Defendant suggests that the expiration of this 5-year period on October 1, 1954 constitutes in this as in all circumstances an absolute bar.
*190 We conclude, however, that plaintiff is not barred.
We have held, impliedly in the case of Phelan, et al. v. United States, 146 Ct. Cl. 218, 222 (1959), with respect to plaintiff Cox, and most recently in express terms in Akol, et al. (Clinton M. Stanford, Plaintiff No. 27) v. United States, 165 Ct. Cl. 444, 449, that a section 411 eligible is not barred by the 5-year limitation when the service has furnished him with positive misinformation concerning his election rights. The misinformation provided in those cases concerned the benefits available under the several alternatives from among which the elegible might have elected. The proposition that he will not be barred when incorrect information has been furnished surely is at least as vital when, as here, the incorrect information goes to his very eligibility. The eligibility of this plaintiff to elect hinged on whether his 1946 re-retirement was by reason of physical disability. The Navy informed him that it was not — which information was incorrect and of such character as to mislead him into inaction by causing him to conclude that the right of election was not his. It matters not that this misinformation, bearing so critically as it does on the electoral prerogative for which section 411 provides, may not have been imparted in response to an inquiry addressed specifically to the subject of that section. Thus we conclude that plaintiff is not barred from electing disability retirement by virtue of the expiration of the 5-year period.[2]
Plaintiff is entitled to the difference between the appropriate disability retirement pay computed under section 402(d) of the Career Compensation Act and the retirement pay which he has been receiving under section 511 of that Act. This is a continuing claim (see Aflague, et al. v. United *191 States, supra, 87), and recovery would ordinarily be limited to the period beginning six years before the commencement of this action. However, because plaintiff has previously obtained a judgment for increased retired pay for the period from June 11, 1946 through June 30, 1952 (computed in accordance with our decision in Sanders v. United States, 120 Ct. Cl. 501 (1951) and in no way involving the issue of the section 411 election), he concedes that the principle of res judicata precludes recovery of any disability retirement pay for any part of that period. Recovery is, therefore, further limited to the period beginning July 1, 1952.
Judgment is entered for plaintiff on his motion for summary judgment, and defendant’s cross-motion is denied. The amount of recovery will be determined in accordance with this opinion pursuant to Rule 47(c)(2). The Trial Commissioner will give plaintiff a reasonable opportunity to apply to the proper board or agency to determine the percentage of his disability as of June 12, 1946, the date on which he was last retired.

 The Director’s letter to the Navy Department, dated January 23, 1953, reads in pertinent part as follows:
“We have obtained from the taxpayer and from the department various medical records, which have been review (sic) thoroughly. It has been determined that the taxpayer was on active service when he became unable to perform his duties and requested retirement. Periodic medical examinations of the officer, as shown by his records, disclose that obesity was present for the entire period of his enlistment and service, both as an enlisted man and as an officer.
“It would, therefore, appear that the taxpayer did incur illness during his active service in the armed forces which is directly related to his retirement, which being the case, his retired pay is for disability attributable to a period wherein the taxpayer was in active service and that pay is not subject to income tax under the provisions of Section 22(b)(5) of the Internal Revenue Code.”

 Plaintiff contenas that his letter of November 10, 1,951, protesting the Navy Department’s position that his retirement in 1946 was not by reason of physical disability, was sufficient to constitute a valid election. Defendant replies that that letter, directed to the matter of the tax consequences of the character of the retirement and not to any rights under section 411, cannot be construed as an election.
The question of what type of request, inquiry, or protest short of the clear expression of the desire to make a choice under section 411 would be adequate to effect an election is an interesting one; however, because we have held that, in any event, the 5-year period does not comprise a bar in the circumstances of positive misinformation before us now, we find it unnecessary to reach this question.